## Commercial Lease

This commercial lease ("Lease") is enter into this day of 10 June 2022 between Cheng & Company, LLC, herein called the "Lessor" or "Landlord," and Jumbo Seafood, Inc., herein called the "Lessee· or ·Tenant· Lessee hereby offers to lease from Lessor the premises situated in Washington D.C. on the first floor at 619 H Street, NW, Washington, D C ("the Premises") upon the following TERMS and Conditions

1. The term of this Lease shall be for ten (5) years, commencing on the lease commencement date. The Lease Commencement Date shall be July 1, 2022.

2. **Rent**

    a Tenant covenants to pay to Landlord during the Lease Term, without any setoff or deduction except as otherwise expressly provided herein, the full amount of all Base Rent and Additional Rent due hereunder and the full amount of all such other sums of money as shall become due under this Lease, all of which hereinafter may be collectively called **"Rent"**

    b During the term of this Lease, the initial Base Rent for the Premises shall be two hundred forty thousand dollars ($240,000) per annum for the first three full years of the Term and shall be paid in monthly installments of twenty thousand dollars (S20,000) Beginning on the third anniversary date of the Commencement Date, and on each anniversary thereafter, the Base Rental for the Premises shall be increased by three percent (3%) of the previous year's Rent computed on a compounding basis Accordingly, the Rent for each year of the Term shall be as follows:

| Term Months (Years) | Annual Base Rent | Monthly Base Rent |
|---|---|---|
| 1-12 (2022-23) | $240 000 00 | $20 000 00 |
| 13-24 (2023-24) | $240 000.00 | $20 000 00 |
| 25-36 (2024-25) | $240 000.00 | $20 000.00 |
| 26-48 (2025-26) | $247 200.00 | $20 600 00 |
| 49-60 (2026-27) | $254 616 00 | $21 218.00 |
| Renewal | Renewal Rate | Month Renewal Rate |
| 61-72 (2027-28) | $262 254.48 | $21 845.54 |
| 73-84 (2028-29) | $270 122.11 | $22,510.17 |
| 85-96 (2029-30) | $278,225.78 | $23,185.48 |
| 97-108 (2030-31) | $286 572.55 | $23,881.04 |
| 109-120 (2031-32) | $295,169.73 | $24 597 48 |
| 120-126 (2032-33) | $304 024.82 | $25 335.40 |

   c. In addition to Base Rent Tenant shall pay, as Additional Rent, all insurance charges, utility charges and expenses, real estate, sales and use taxes or other similar taxes, if any, levied or imposed by any city, state, county or other governmental body having authority, which Tenant fails to pay when

Exhibit B

due and such payments to be in addition to all other payments required to be paid to Landlord by Tenant under this Lease. Additional Rent shall also include, and Lessee shall pay, all impositions, that is, all taxes (including real estate, sales. use, and occupancy taxes}, assessments, water and sewer charges, charges for public or private utilities, excises, levies, license and permit fees, and other charges, special, ordinary, and extraordinary, foreseen and unforeseen, of any kind and nature whatever (including all interest and penalties on them), which shall or may during the lease term be assessed, levied, charged, confirmed, or imposed on or become payable out of or become a lien on the leased premises or the improvements or any part of same, the appurtenances to same, or the sidewalks, streets, or vaults adjacent to same, or the rent and income received by or for the account of lessee from any sub lessees or for any use or occupation of the leased premises or the improvements, and such franchises, licenses, and permits as may be appurtenant to the use of the leased premises or the improvements, this transaction, or any documents to which lessee is a party, creating or transferring an interest or estate in the leased premises or the improvements. Impositions shall not be deemed to include any municipal, state, or Federal income taxes assessed against lesser, or any municipal, state, or Federal capital levy, estate, succession, inheritance, or transfer taxes of lesser, or any franchise taxes imposed on lesser, or any income, profits, or revenues tax, assessment, or charge imposed on the rent received as such by lesser under this lease agreement. Lessee shall pay all of the mentioned impositions before any fine, penalty, interest, or cost may be added for nonpayment, and shall furnish to lessor, on request, official receipts or other satisfactory proof evidencing such payment, provided that, if any imposition is payable in installments over a period of years, lessee shall be liable only for payment of those installments falling due and payable during the lease term, with appropriate proration in case of fractional years. Such payments shall be paid concurrently with the payments of the Rent on which the tax is based.

d. Base Rent and Additional Rent for each calendar year or portion thereof during the Lease Term, shall be due and payable in advance in monthly installments on the first day of each calendar month during the Lease Term, without demand. If the Lease Term commences on a day other than the first day of a month or terminates on a day other than the last day of a month, then the installments of Base Rent and Additional Rent for such month or months shall be prorated, based on the number of days in such month. All amounts received by Landlord from Tenant hereunder shall be applied first to the earliest accrued and unpaid Rent then outstanding. Tenant's covenant to pay Rent shall be independent of every other covenant set forth in this Lease.

e. The Monthly rent shall be payable in advance on the first day of each month without demand, set *off* or abatement, to Tony Cheng at 619 H Street, N.W.,

Washington, D.C (or such other place as may be designated by Landlord In wntrng). All sums payable by Tenant under the Lease shall be paid to Landlord rn legal tender of the United States without setoff, deduction or demand. If Landlord shall at any time accept rent after it shall have become due and payable, such acceptance shall not excuse a delay upon subsequent occasions or constitute a waiver of any of Landlord's rights hereunder

f   Tenant agrees to pay to Landlord, as additional rent, a late fee equal to the sum of Five Percent (5%) of any monthly rent installment which is not paid to Landlord within Ten (10) days of the date on which said monthly installment of rent Is due and payable. It is mutually agreed that payments made by check which do not clear the bank cause additional expenses for bookkeeping and clerical services  Tenant agrees that any such check issued for payments due hereunder which Is returned without payment for any reason whatsoever, shall carry a charge of FIFTY AND NO/100 DOLLARS ($50.00) for each time said check is returned, which sum shall be considered as additional rent hereunder, and shall be paid by Tenant to Landlord immediately upon notice thereof.

g.  In addition, Tenant shall have one (1) five (5) year option to extend the Term at the Base Rent Rate as increased over the Term of the Lease by three percent (3%) each year (the "Renewal Option" and "First Renewal Term") In the event Tenant Is currently in default at the time of exercise of the Renewal Option, then Landlord shall have the sole and absolute discretion to deny the Renewal Option.  Tenant must give wntten notice of at least 90 days In advance of the end of the Original Term of Tenant's intention to renew which shall be under the same terms and conditions as set forth in this Lease with the exception of monthly rent which shall be the Base Rent Rate as increased over the Term of the Lease by three percent (3%) each year.

h.  If Tenant holds over and is in possession of the Premises at the end of the term or any renewal of this Lease, then the tenancy under this Lease shall become month-to-month upon all of the same terms and conditions contained in this Lease, at One Hundred fifty percent (150%) of the rental rate then in effect and such tenancy shall be terminable by either party upon Thirty (30) days written notice to the other party.

3.   **Use.** Lessee shall use and occupy the premises for restaurant and other related business & personal services. The premises shall be used for no other purpose. Lessor Represents that premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

4.   **Care and Maintenance of Premises.** Lessee acknowledges that the premises is in good order and repair, unless otherwise indicated herein. Lessee shall, at his own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, and plumbing and  heating installations and any other

system or equipment upon premises and shall surrender the same, at the termination hereof, in as good condition as received, normal wear and tear expected All repairs required, excepting the roof, exterior walls, and structural foundations shall be maintained by Lessee Lessee shall also maintain in good condition such portions adjacent to premises, such as sidewalks, driveways, lawns and shrubbery, which would otherwise be required to be maintained by Lessor.

5    **Condition of Promises.**  Tenant's taking possession of the Premises shall be conclusive evidence of Tenant's acceptance thereof in good order and satisfactory condition. Tenant shall acknowledge taking possession of the Premises in writing Tenant agrees that Landlord has made no representations as to conformance with applicable laws respecting the condition of the Premises or the presence or absence of Hazardous Materials (hereinafter defined) in, at, under or abutting the Premises or the environment. Tenant also agrees that no representations respecting the condition of the Premises, no warranties or guarantees, expressed or implied, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, with respect to workmanship or any defects in material, and no promise to decorate, alter, repair or improve the Premises either before or after the execution hereof, have been made by Landlord or its agents to Tenant unless the same are contained herein. Tenant shall accept the property in its current condition •as is" condition as of the commencement of the Tenancy.

6. **Alterations.** Lessee shall not, without first obtaining the written consent of Lessor, make any alterations, additions, or improvements in, to or about the premises Tenant shall, at Tenant's expense, provide further improvements to the Premises, if any accordance with plans and specifications submitted by Tenant and approved by Landlord. Tenant shall submit plans and specifications to Landlord for Landlord's prior approval, which approval shall not be unreasonably withheld, before making any such improvements and Tenant shall obtain all permits therefore. However, Landlord shall provide reasonable assistance to Tenant in obtaining all permits and licenses required to make the improvement and specifications Tenant shall be permitted to perform work in accordance with approved plans and specifications concurrently with the work to be performed by Landlord However, Landlord reserves the right to reasonably limit such concurrent work by Tenant in the event Landlord's contractors deem in necessary for reasons of safety or efficiency. Tenant shall promptly pay all charges for such improvements and shall not permit any mechanic's or material men's liens to be filed against the Premises. In the event any such liens are filed, or are threatened to be filed, Landlord may, at its option, discharge same by payment and Tenant shall within five (5) days of receiving notice from Landlord of discharge of any lien reimburse Landlord for all charges incurred thereby, as additional rent

All improvements by Tenant shall be made (a) in a good, workmanlike and prompt manner, (b) by a contractor and in accordance with the plans and specifications approved in writing by Landlord, (c) in accordance with all applicable legal requirements and requirements of any insurance company insuring the Property or portion thereof, and (d) after Tenant has obtained or caused it contractors to obtain (1) broad form comprehensive

Commercial Lease 619 H St NW                                                                                   Page 3 of 12

general ltab11tty insurance and (i1) worker's compensations insurance complying with the laws of the D1stnct of Columbia  Unless otherwise agreed in writing  at the conclusion of Tenant's occupancy of the Premises, any alterations, improvements and fixtures installed by Tenant in the Premises, at Landlord's option, shall either become the property of Landlord or be removed at Tenant's expense, In which event the Premises shall be restored by Tenant to their cond1t1on existing at commencement of this Lease.

7       **Ordinance and Statutes.** Lessee, at its expense, shall promptly (1) comply with all laws, statutes, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations. permits, or licenses which now, or at any subsequent time, may be matenally appltcable to the leased premises or the improvements or any part of same, or any of the adjoining sidewalks  streets, or ways or any matenal use or cond1t1on of the leased premises or the improvements or any part of same; (2) comply with all terms of any insurance policy covering or applicable to the leased premises or the improvements or any part of same, all requirements of the issuer of any such policy, and all orders, rules, and regulations of the National Board of Fire Underwriters applicable to or materially affecting the leased premises or the improvements or any part of same, (3) procure, maintain, and comply with all permits, licenses, and other authonzat1ons required for any use of the leased premises or the improvements or any part of same then being made, and for the proper erection, installation, operation, and maintenance of the improvements; and (4) comply with any instruments of record at the time in force affecting the leased premises or the improvements or any part of same. The compliance required in clauses (1) and (2) above shall occur whether or not compliance shall require structural changes or interfere with the use and enjoyment of the leased premises or the improvements or any part of same

8       **Assignment and SublottJng.** Lessee shall not assign lease or sublet any portion of the premises without pnor wntten consent of the Lessor, which shall not be unreasonably with held, Any such assignment or subletting without the consent shall be void and , at the option of the Lessor, may terminate this lease

9       **Utilities.** All applications and connections necessary utility service on the demised premises shall be made in the name of Lessee only, and Lessee shall be solely liable for utility charges as they become due, including those for sewer, water, gas, electricity, and telephone services.

10      **Insurance.** Lessee, at its expense, shall maintain public liability insurance including bodily injury and personal property damage insuring Lessee and Lessor with coverage as the Law Requires  At all times after the execution of this Lease, Tenant will carry and maintain at Tenant's expense public hab1hty insurance, including the hazards of bodily injury  personal property damage  personal injury, and any assumed or contractual hab1lrty under contracts defined as "incidental contract" under standard Insurance Services Offices definitJons  to afford protection with hm1ts not less than $1,000,000 00 each occurrence/S2,000,000 00 aggregate 1f wntten on a Combined Single L1m1t basis for bodily Injury and property damage, or $1 000,000 00 each occurrence, $2,000,000 00 aggregate for bodily injury and $1,000 000 00 aggregate for property damage 1f written on a Spilt

Commercial Lease 619 H Street, **NW**                                                                                                       Page 5 of 12

Limit basis, and in either event, the limit for personal injury shall be $2,000,000.00. The insurance policies evidencing such insurance shall name Landlord as add1t1onal insured and shall also contain a provision by which the insurer agrees that such pollcies shall not be cancelled except after Thirty (30) days written notice to Landlord. Upon execution of this Lease and annually thereafter, and upon request by Landlord, Tenant shall deliver to Landlord a certificate from the insurer evidencing each such policy to be in effect. In the event Tenant fails to procure such insurance, Landlord may, but shall not be obligated to procure same, and all expenses incurred by Landlord in connection therewith shall be chargeable to Tenant as add1t1onal rent.

14.    **Eminent Domain.** If the premises or any part thereof or any estate therein, To any other part of the building materially affecting Lessee's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent, and any additional rent, shall be apportioned as of the termination date, and any rent paid for any period beyond that date shall be repaid to Lessee. Lessee shall not be entitled to any part of the award for such taking or any payment in lieu thereof, but Lessee may file a claim for any taking of fixtures and improvements owned by Lessee, and for moving expenses.

15    **Destruction of Premises.** In the event of a partial destruction of the premises during their term hereof, from any cause, Lessor shall forthwith repair the same provided that such repairs can be made within sixty (60) days under existing governmental laws and regulations, but such partial destruction shall not terminate this lease, except that Lessee shall be entitled to proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs shall interfere with the business of Lessee on the premises. If such repairs cannot be made with said sixty (60) days, Lessor, at his option, may make the same within a reasonable time, this lease continuing in effect with the rent proportionately abated as aforesaid, and in the event that Lessor shall not elect to make such repairs which cannot be made within sixty (60) days, this lease may be terminated at the options of either party. In the event that the building in which there demised premises may be situated is destroyed to an extent of not less than one-third of the replacement costs thereof, Lessor may elect to terminate this lease whether the demised premises be injured or not A total destruction of the building in which the premises may be situated shall terminate this lease.

16    **Default** The happening of any of the following shall be deemed to be an event of default by Tenant under this Lease: (a) failure of Tenant to pay any installment of rent when due within Ten (10) days and or failure to pay other charge or money obligation herein required to be paid by Tenant within Ten (10) days after the written notice of default from the Landlordsame becomes due and payable, (b) perform any other of its covenants under this Lease within Thirty (30) days after receipt of written notice from Landlord; (c) the filing of a petition In bankruptcy by Tenant or adjudication that Tenant Is bankrupt, or the making by Tenant of a general assignment for the benefit of creditors, or the appointment of a receiver of substantially all of the property of Tenant, including, in any event, this Lease, in a proceeding based upon Tenant's insolvency which shall not be discharged within Ninety (90) days after such appointment; or (d) vacation or

abandonment of the Premises by Tenant Upon the occurrence of any of the aforesaid events of default by Tenant, Landlord lawfully may 1mmed1ately, or at any time thereafter, and without any further notice or demand, enter into and upon the Premises or any part thereof in the name of the whole, by force or otherwise, and hold the Premises as 1f this Lease had not been made, and expel Tenant and remove Tenant's property without being deemed to be guilty in any manner of trespass, or Landlord may send written notice to Tenant of the termination of this Lease. Upon entry as aforesaid or, 1f Landlord shall so elect, upon the giving of such wntten notice, this Lease shall terminate. Tenant hereby waives all rights, by statue or otherwise, to a notice to quit.

If Landlord shall tem11nate this Lease as hereinabove provided, whether or not the Premises or any part thereof shall be relet and regardless of the terms of any such reletting, or to the extent of Landlord's efforts to relet, Tenant shall remain liable for the performance of all covenants under this Lease, and for any and all damages and expenses incurred by Landlord ansing from such default and re ntry and for any loss of rents sustained by Landlord for the balance of the term of this Lease In the event of default under this Lease by Tenant, Landlord shall have the nght, at Landlord's option, to relet the Premises as agent of Tenant and to apply the proceeds received from such relett1ng toward the payment of the rent under this Lease, and any loss of rent for the balance of the term shall be payable monthly by Tenant in advance in the same manner that rent hereunder 1s to be paid

Tenant expressly agrees to reimburse Landlord for any reasonable expenses for court costs, counsel fees and real estate and other professional fees, and collection agencies Landlord may incur in enforcing the latter's nght against Tenant under the Lease, including, but not being limited to, such rights to the collection of rent and the securing of possession of the Premises

17   **Indemnity And Liability of Landlord**

(a) Tenant agrees to and does hereby indemnify Landlord and Agent and save Landlord and Agent harmless and shall defend Landlord and Agent from and against any and all claims, actions, damages, liability and expense, including attorney's and other professional fees, in connection with loss of life, personal inJury and property damage arising from or out of the occupancy or use of the Premises or any part thereof or any parking areas, sidewalks, or other amenities in the v1cin1ty of the Premises Neither Landlord nor Agent shall be responsible or liable to Tenant, or to those claiming by, through or under Tenant, for any loss or damage to person or property which may be occasioned by or through the acts or omissions of persons occupying space in the vicinity of the Premises, or which may be occasioned by or through the breaking, bursting, stoppage or leakage of water, gas, 011, sewer or steam pipes and equipment or electrical wires Landlord, 1t employees and agents, (including any construction workers or companies), shall not be liable to Tenant, Tenant's employees, agents (including construction workers or companies) invitees, assignees, subtenants, contractors, licensees, concess1onaries (collectively "invitees") or any other person or entity for any damage (including indirect and consequential damage), injury, loss, claim (including

claims for interruption of or loss to the business to be conducted or being conducted in the Premises) based on or arising out of any cause whatsoever(except otherwise provided in this Section}, including but not limited to the following: the construction of improvement set forth in section 6; repair to any portion of the premises; interruption in the use of the Premises or any equipment therein and accident or damage resulting from the use or operation (by Landlord, Tenant or any other person or entity) of the heating, cooling, electncal, sewerage, or plumbing equipment or apparatus; tennination of this Lease by reason of destruction of the Premises or Property; any fire, robbery, theft, vandalism, mysterious disappearance and/or other casualty, actions of any other tenants of the Property or of any other person or entity; or leakage in any part of the Premises or Property from water, rain, ice or snow that may leal<into, or flow form, any part of the Premises or the Property, or from drains, pipes or plumbing fixtures in the Premises or the Property. Any failure of inability to furnish any service required hereunder shall not be considered an eviction, actual or constructive of Tenant from the Premises and shall not entitle Tenant to tenninate this Lease or to an abatement for any rent payable hereunder in the absence of a court order.

(b) If any condition exists which may be the basis of a claim of constructive eviction, then Tenant shall give the Landlord written notice thereof and a reasonable opportunity to correct such condition prior to any claims by Tenant that it has been constructively evicted. Any property placed by Tenant or any Invitees in or about the Premises or the Property shall be at the sole risk of Tenant, and Landlord shall not in any manner be held responsible therefore. Notwithstanding the foregoing provisions of this Section, this provision shall not release Landlord from liability to Tenant for any physical injury to any natural person or damage to personal property cause by the gross negligence or willful misconduct of Landlord or its employees. Tenant shall not have the right to set off or deduct any amounts allegedly owed to Tenant pursuant to any claim against the Landlord from any rent or other sums payable to Landlord. Rather, Tenant's sole remedy for recovering upon such a claim shall be to institute an independent action against Landlord If Tenant or any Invitee is awarded a money judgment against Landlord, then recourse for satisfaction of such judgment shall be limited to execution against the estate and interest of Landlord in the Property. No other asset of Landlord, any partner, member, director or officer of Landlord (collectively, "officer") or any other person or entity shall be available to satisfy or subject to such judgment, nor shall any officer or any other person or entity have personal liability for satisfaction of any claim or judgment against Landlord or any officer. Landlord shall never have any liability with respect to claims for interruption of or loss to the business being conducted on the premises.

18. **Landlord Access.** Landlord or his agents shall have access to the Premises at any and all reasonable times for the purpose of inspecting the Premises, protecting the Premises against fire or other damage, and exhibiting the Premises to prospective tenants or purchasers. Landlord reserves the right to show the Premises to prospective new tenants or purchasers and to post signs on the Premises advertising its availability for sale or lease within the last One Hundred Eighty (180) days of Tenant's occupancy of the Premises Upon the occurrence of any default under paragraph 16, Landlord shall

Commercial Lease 619 H Street, NW.                                                                                               Page **8** of **12**

immediately have the right to show the Premises to prospective new tenants or purchasers and to post signs on the Premises advertising its availability for sale or lease

19. **Estoppel Certificate.** Landlord is hereby irrevocably vested with full power and authonty to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Premises, or the Building or the ProJect and Tenant agrees within ten (10) days after written demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request At any time and from time to time, within Ten (10) days after request by Landlord, Tenant will execute, acknowledge and deliver to Landlord and to such other party as may be designated by Landlord, an estoppel certificate in form acceptable to Landlord setting forth the status of performance of the obligations of the parties under this Lease If Tenant fails to provide such certificate within Ten (10) days after request by Landlord, Tenant shall be deemed to have approved the contents of any such certificate submitted to Tenant by Landlord. The failure to provide such certificate may, at the option of the Landlord, be considered an event of default hereunder in accordance with Section 15 hereof.

20 **Waiver.** No reference in this Lease to any specific right or remedy shall preclude Landlord from exercising any other right or from having any other remedy or from maintaining any action to which Landlord may otherwise be entitled at law or in equity No failure by Landlord to insist upon the strict performance of any covenant herein or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach, shall operate as a waiver of any such breach or covenant or any subsequent breach thereof. Tenant does hereby knowingly and voluntarily waive its nght to trial by Jury in any dispute arising hereunder, and its right to applicable statutory provisions concerning notice to vacate the Premises.

21. **Landlord's Right to Cure.** If Tenant fails to perform any covenant or responsibility of Tenant under this Lease, then Landlord may at Landlord's option perform such responsibility and Tenant shall promptly reimburse Landlord for any costs so incurred by Landlord as additional rent hereunder. Any and all costs and expenses which are Tenant's respons1bi11ty under this Lease may be collected by Landlord as additional rent hereunder.

22. **Landlord's Responsibility.** It Is the intention of Landlord and Tenant that Landlord shall only be responsible for those items and expenses which are expressly made Landlord's responsibility herein, and all other items and expenses shall be borne by Tenant.

23 **No Joint Venture.** Any intention to create a joint venture, partnership or agency relationship between the Landlord and Tenant is hereby expressly denied. Nothing contained in this Lease shall be construed so as to confer upon any other party the rights of a third party beneficiary, with the exception of the rights of the Agent.

24. **Hazardous Waste.**

(a) Tenant will not generate, manufacture, produce, release, discharge, or dispose of on, under or about the Premises or transport to or from the Premises any Hazardous Substance (as defined below) or allow any other person or entity to do so except in minor amounts under conditions permitted by applicable laws.

(b) Tenant shall keep and maintain the Premises in compliance with, and shall not cause or permit the Premises to be in violation of, any Environmental Law (as defined below)

(c) Landlord shall have the right to join and participate in, as a party 1f it so elects, any legal proceedings or actions initiated with respect to the Premises in connection with any Environmental Law, due to Tenant's negligence, and have its attorney fees in connection therewith paid by Tenant.

(d) Tenant shall protect, indemnify and hold harmless Landlord, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including attorney fees and costs) directly or indirectly arising out of or attributable to the Tenant's use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under or about the Premises, including without limitation (i) all foreseeable consequential damages, and (i1) the costs of any required or necessary repair, cleanup or detoxification of the Premises and the preparation and implementation of any closure, remedial or other required plans.

(e) In the event that any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (the "Remedial Work") is reasonable, necessary or desirable under any applicable local, state or federal law or regulation, any Judicial order, or by any governmental or non-governmental entity or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous Substance in or into the air, soil, ground water, surface water or soil vapor at, on, about, under or within the Premises (or any portion thereof), resulting from the Tenant's use. Tenant shall within Thirty (30) days after written demand for performance thereof by Landlord (or such shorter period of time as may be required under any applicable law, regulation, order or agreement), commence and thereafter diligently prosecute to completion, all such Remedial Work  All Remedial Work shall be performed by contractors approved in advance by Landlord, which approval will not be unreasonably withheld, and under the supervision of a consulting engineer approved by Landlord, which approval will not be unreasonable withheld.  All costs and expenses of such Remedial Work shall be paid by Tenant including, without limitation, Landlord's reasonable attorney fees and costs incurred in connection with monitoring or review of such Remedial Work.  In the event Tenant shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Landlord may, but shall not be required to, cause such Remedial Work to be

Commercial Lease 619 H Street NW                                                                Page 10 of 12

performed and all costs and expenses thereof, or incurred in connection therewith, shall become immediately due and payable as additional rent to the Landlord from the Tenant.

(f) "Environmental Law" means any federal, state or local law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or the environmental conditions on, under or about the Premises, including without hmitat1on the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") as amended, 42 U.S.C Sections 9601 et seq., and the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. Sections 6901 et seq

(g) The term "Hazardous Substance" includes without limitation:

(i) Those substances included within the definitions of "hazardous substances", or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act, 49 U.S C. Sections 1801 et seq., and in the regulations promulgated pursuant to said laws.

(ii) Those substances listed 1n the United States Department of Transportation Table (49 CFR 172.101 and amendments thereto) or by the Environmental Protection Agency (or any successor agency) as hazardous substances (40 CFR Part 302 and amendments thereto).

(iii) Such other substances, materials, and wastes which are or become regulated under applicable local, state or federal law, or the United States Government, or which are classified as hazardous or toxic under federal, state, or local laws or regulations.

(iv) Any material, waste or substance which is (a) asbestos, (b) polychlorinated b1phenyls, (c) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. Sections 1251 et seq., (33 U.S C. Section 1321) or listed pursuant to Section 307 of the Clean Water Act (33 U.S.C. Section 1317), (d) explosives, or (e) radioactive materials. To the best of Landlord's knowledge, there are not existing environmental problems.

**25  Notices.** All notices hereunder shall be made in writing and shall be hand delivered or mailed by Registered or Certified U.S. Mail, Return Receipt Requested, First Class, postage prepaid, to the parties hereto at their respective addresses set forth below, or at such other address of which either party shall notify the other in accordance with the provisions hereof. Any notice required to be given hereunder on or before a specified date shall be deemed to have been duly and timely given 1f hand delivered before 5:00 P.M. on such date, or when given by mail as aforesaid, 1f postmarked before Midnight on such date. Notices given by mail shall be addressed to:

IF TO LANDLORD:  Cheng and Co.                    IF TO TENANT: Cheng Restaurant

Anthony C.Y. Cheng                                 Julie Yun Li Cheng
619 H Street, N.W.                                 619 H Street, N.W.
Washington, D. C.                                  Washington, D. C.

26. **Attorney's Fees.** In case suit should be brought for recovery of the premises, or for any sum due hereunder, or because of any act which may arise out of the possession of the premises, by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee.

27. **Waiver.** No reference in this Lease to any specific right or remedy shall preclude Landlord from exercising any other right or from having any other remedy or from maintaining any action to which Landlord may otherwise be entitled at law or in equity. No failure by Landlord to insist upon the strict perfom,ance of any covenant herein or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach, shall operate as a waiver of any such breach or covenant or any subsequent breach thereof  Tenant does hereby knowingly and voluntarily waive its right to trial by jury in any dispute arising hereunder, and ,ts nght to applicable statutory provisions concerning notice to vacate the Premises

28. **Transfer by Landlord And Subordination.** The Landlord reserves the right to transfer to any entity or person all right title and interest m this Lease to any person or entity without the consent of the Tenant. Landlord shall have the right to transfer and assign, in whole or in part, all of its rights and obligations hereunder and in the Premise referred to herein, and in such event and upon such transfer Landlord shall be released from any further obligations hereunder provided that the transferee shall assume all of Landlord's obligations hereunder from the date of such transfer, and Tenant agrees to look solely to such successor in interest of Landlord for the performance of such obligations. Such transfer shall not affect Tenant's rights, interest and title under this Lease in any way. This lease is and shall be subordinated to all existing and future llens and encumbrances against the property.

29. **Entire Agreement.** The foregoing constitutes the entire agreement between parties and may be modified only by a writing signed by both parties.

Cheng & Company, LLC

Lessor: *[signature]*

Jumbo Seafood Inc

Lessee: *[signature]*

Commercial Lease 619 H Street NW                                    Page 12 of 12