# PURCHASE AGREEMENT

THIS DOCUMENT (THE "AGREEMENT") IS MORE THAN A RECEIPT FOR MONEY. IT IS INTENDED TO BE A LEGALLY BINDING AGREEMENT.

Marcus & Millichap Real Estate Investment Services of North Carolina, Inc. ("Agent"), as agent for Wendell Webster, Chapter 7 Trustee for Cheng and Company LLC (Case: Case No. 23-00104) ("Seller"), shall receive from MR 619 H Street A LLC or an entity under Buyer's control ("Buyer") proof of funds deposited into the escrow account of the Title Company in the sum of $200,000.00 in the form of CERTIFIED CHECK OR WIRE TRANSFER within three (3) business days after the date that all parties have signed this Purchase Agreement (the "Effective Date"). This sum is a deposit ("Deposit") to be applied to the purchase price of that certain real property (referred to as the "Property") located in Washington, DC, and more particularly described as follows and including any items covered by Section 8 of this Agreement:

**619 H Street NW**
**Washington, DC 20001**

**Square 0453, Lot 0830**

## TERMS AND CONDITIONS

Seller agrees to sell the Property, and Buyer agrees to purchase the Property, on the following terms and conditions, and subject to Bankruptcy Court Approval:

1) **PURCHASE PRICE:** The Purchase Price for the Property is four million two-hundred and fifty-thousand dollars ($4,250,000). The Purchase Price, less the amount of the Deposit paid by Buyer, and subject to appropriate adjustments and prorations as hereinafter provided, shall be paid as follows:

2) **DEPOSIT:** The deposit in the sum of $200,000.00 shall be deposited by Buyer with Avenue Commercial Title Insurance Company, Inc. within three (3) business days after the Effective Date. The Deposit shall be held as earnest money and shall be applied as part payment of the Purchase Price at closing or as otherwise provided herein. If this Agreement is voided by Buyer for any reason permitted under this Agreement, the Deposit shall be refunded to Buyer, and no party hereto shall have any further rights to said Deposit.

3) **TITLE:** Seller shall convey title to Property free and clear of liens pursuant to Bankruptcy Court Order. Seller shall convey by trustee's deed to Buyer (or such other person as Buyer may specify) marketable and insurable fee simple title, free of all liens, encumbrances, judgments, covenants, conditions, restrictions, tenancies (oral or written), easements and rights-of-way, recorded or unrecorded, subject only to the exceptions approved by Buyer in accordance with this Agreement. Title shall be insurable by a standard ALTA owner's policy of title insurance issued by the Title Company with standard exceptions in the amount of the purchase price with premium paid by Buyer.

4) **CLOSING:** Closing shall be held on or before twenty (20) calendar days after the entry of an order of the U.S. Bankruptcy Court for the District of Columbia approving the sale of the Property under this Agreement (the "Closing Date"), and after the title company is able to insure fee simple title to the Property, or at such other time as is reasonably agreeable to Buyer and Seller with at least five (5) days' notice prior to the Closing Date. At the Closing, Seller shall execute and deliver to Buyer a trustee's deed subject to those exceptions permitted by this Agreement, an I.R.C. Section 1445 non-foreign affidavit, and any other documents reasonably required by the Title Company; and each party hereto shall execute and deliver such other documents necessary or appropriate to effect and complete the Closing.

Real property taxes, closing costs, premiums on insurance acceptable to Buyer, interest on any debt being assumed or taken subject to by Buyer, and any other ongoing expenses or costs of the continued operation of the Property shall be evenly split and/or prorated as of the Closing Date. Security deposits, advance rentals, and the amount of any future lease credits shall be credited to Buyer at Closing. The amount of any assessment not customarily paid with real property taxes shall be (select one "X") X paid ___ assumed by SELLER.

5) **NO FINANCING CONTINGENCY – THERE IS NO FINANCING CONTINGENCY**

6) **INSPECTION CONTINGENCIES – NONE – THERE ARE NO INSPECTION CONTINGENCIES**

7) **PROPERTY PRORATIONS:** For the purposes of calculation of prorated expenses, the Closing Date shall be deemed a day of ownership by the Seller.

Exhibit E

8) **PERSONAL PROPERTY:** No personal property will be conveyed to Buyer under the terms of this Agreement except those items which are fixtures on the Property and any items associated with the Property that are collateral under the Deed of Trust dated February 15, 2012, and recorded February 21, 2012 between Cheng & Company LLC and United Bank, successor to Bank of Georgetown.

9) **CONDITION OF PROPERTY:** It is understood and agreed that the Property is being sold "**AS IS**"; that Buyer has, or will have prior to the Closing Date, inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use. The parties recognize and agree that Buyer is acquiring the Property in "as-is, where-is" condition, with all faults. The Property shall be in substantially the same condition at closing as on the Effective Date, ordinary wear and tear and damage by casualty excepted. Buyer hereby acknowledges that it shall be acquiring the Property in reliance solely upon its own investigations, studies and due diligence and, except as expressly provided in this agreement, shall not rely on any statement, representation, or warranty whatsoever by Seller, Agent or their respective officers, directors, employees, shareholders, members, agents, contractors or representatives (collectively referred to in this Agreement as the "Seller/Agent Parties"). Buyer understands and acknowledges that, except as expressly provided in this agreement, the Seller/Agent Parties make no representations or warranties relating to the property including, without limitation, design, condition or repair, value, expense of operation, income potential, compliance with drawings or specifications, absence of defects, absence of faults, flooding, or compliance with laws, rules and regulations, taxes, the expressed warranties of merchantability and fitness for a particular purpose, or any other fact or condition which has or might affect the Property or the ownership, use, occupancy, operation, condition, repair, value, or income potential thereof. Commencing with the execution of this Agreement and continuing until Closing, Purchaser shall have the right to inspect the Property, and Seller shall provide Purchaser access to the Property for this purpose.

**Buyer's Initials** _____

10) **RISK OF LOSS:** Risk of loss to the Property shall be borne by Seller until title has been conveyed to Buyer. In the event that the improvements on the Property are destroyed or materially damaged between the Effective Date of this Agreement and the date title is conveyed to Buyer, Buyer shall have the option of demanding and receiving back the entire Deposit and being released from all obligations hereunder, or alternatively, taking such improvements as Seller can deliver. Upon Buyer's physical inspection and approval of the Property, Seller shall maintain the Property through closing in the same condition and repair as approved, reasonable wear and tear excepted.

11) **POSSESSION:** Possession of the Property shall be delivered to Buyer at closing, free and clear of any tenants or leases.

12) **LIQUIDATED DAMAGES: By placing their initials immediately below, Buyer and Seller agree that it would be impracticable or extremely difficult to fix actual damages in the event of a default by Buyer, that the amount of Buyer's Deposit hereunder (as same may be increased by the terms hereof) is the parties' reasonable estimate of Seller's damages in the event of Buyer's default, and that upon Buyer's default in its purchase obligations under this Agreement, not caused by any breach by Seller, Seller shall be released from its obligations to sell the Property and shall retain Buyer's Deposit as liquidated and agreed upon damages, which shall be Seller's sole and exclusive remedy in law or at equity for Buyer's default.**

13) **BUYER EXCHANGE:** Seller agrees to cooperate should Buyer elect to purchase the Property as part of a like-kind exchange under IRC Section 1031. Buyer's contemplated exchange shall not impose upon Seller any additional liability or financial obligation, and Buyer agrees to hold Seller harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Buyer's ability to dispose of its exchange property or effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

14) Intentionally omitted.

15) **EXCLUSIVE LISTING**: Agent is the exclusive listing broker of the Property that is the subject of this transaction. Under District of Columbia law, Marcus & Millichap represents the Seller as the Seller's agent. Marcus & Millichap is not the agent of the Buyer; however, Marcus & Millichap does have the following affirmative legal obligations to the Buyer:

   a. Diligent exercise of reasonable skill and care in the performance of its duties.
   b. A duty of honest and fair dealing and good faith.
   c. A duty to disclose all facts known to it materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Buyer.

16) **OTHER BROKERS:** Buyer and Seller agree that, in the event any broker other than Agent or a broker affiliated with Agent is involved in the disposition of the Property, Agent shall have no liability to Buyer or Seller for the acts or omissions of such other broker, who shall not be deemed to be a subagent of Agent.

Bankruptcy Case No 23-00104 – Purchase Agreement                Buyer's Initials _____ Seller's Initials _____
Copyright Marcus & Millichap 2024

17) **LIMITATION OF LIABILITY:** Except for Agent's gross negligence or willful misconduct, Agent's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Agent in any transaction hereunder.

18) **SCOPE OF AGENT'S AUTHORITY AND RESPONSIBILITY:** Agent shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property on behalf of either Buyer or Seller, or for providing either party with professional advice with respect to any legal, tax, engineering, construction or hazardous materials issues. Except for maintaining the confidentiality of any information regarding Buyer or Seller's financial condition and any future negotiations regarding the terms of this Purchase Agreement, Buyer and Seller agree that their relationship with Agent is at arm's length and is neither confidential nor fiduciary in nature.

19) **BROKER DISCLAIMER:** Buyer and Seller acknowledge that, except as otherwise expressly stated herein, Agent has not made any investigation, determination, warranty or representation with respect to any of the following: (a) the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that lease, options or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including, but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefor. Buyer further agrees to reaffirm its acknowledgment of this disclaimer at closing and to confirm that it has relied upon no representations of Agent in connection with its acquisition of the Property.

Buyer's Initials _____    Seller's Initials _____

20) **LEAD-BASED PAINT HAZARDS:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. (SELLER TO INITIAL ONE BELOW):

(_____)  1. Seller warrants that the Property was constructed after 1978.
(_X*_)   2. Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

*Seller is a Chapter 7 Bankruptcy Trustee and has no personal knowledge with regard to the Property. All disclosures made are on information and belief only.

21) **MOLD/ALLERGEN ADVISORY AND DISCLOSURE:** Buyer is advised of the possible presence within properties of toxic (or otherwise illness-causing) molds, fungi, spores, pollens and/or other botanical substances and/or allergens (e.g. dust, pet dander, insect material, etc.). These substances may be either visible or invisible, may adhere to walls and other accessible and inaccessible surfaces, may be embedded in carpets or other fabrics, may become airborne, and may be mistaken for other household substances and conditions. Exposure carries the potential of possible health consequences. Agent strongly recommends that Buyer contact the State Department of Health Services for further information on this topic.

    Buyer is advised to consider engaging the services of an environmental or industrial hygienist (or similar, qualified professional) to inspect and test for the presence of harmful mold, fungi, and botanical allergens and substances as part of Buyer's physical condition inspection of the Property, and Buyer is further advised to obtain from such qualified professionals information regarding the level of health-related risk involved, if any, and the advisability and feasibility of eradication and abatement, if any.

    Buyer is expressly cautioned that Agent has no expertise in this area and is, therefore, incapable of conducting any level of inspection of the Property for the possible presence of mold and botanical allergens. Buyer acknowledges that Agent has not made any investigation, determination, warranty or representation with respect to the possible presence of mold or other botanical allergens, and Buyer agrees that the investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefore.

22) **DISPUTES:** If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein (including but not limited to the parties' rights to the Deposit or the payment of commissions as provided herein), Buyer, Seller and Agent agree that such controversy shall be settled before the U.S. Bankruptcy Court for the District of Columbia.

23) **SUCCESSORS & ASSIGNS:** This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

24) **TIME:** Time is of the essence of this Agreement.

25) **NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Agent) at their respective addresses as set forth below. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or holiday, the time for performance shall be extended to the next business day.

26) **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge its terms, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

27) **EFFECTIVE DATE:** The "Effective Date" of this Agreement shall be the date on which the Seller executes this Agreement and delivers the fully executed Agreement to the Buyer.

28) **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the District of Columbia and the U.S. Bankruptcy Code.

29) **EMINENT DOMAIN:** In the event that prior to the closing all or any portion of the Property is condemned, or condemnation proceedings have been instituted by or on behalf of any public or quasi-public entity or for any public or quasi-public use or purpose, then, in the event that such condemnation substantially and materially adversely affects the Property, Buyer shall have the option to: (i) terminate this Agreement and receive the return of the deposit and all interest accrued thereon, or (ii) proceed with the closing and receive a credit against the Purchase Price of any award received or to be received.

30) **SEVERABILITY:** In the event any term or provision of this Agreement shall be held illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions of this Agreement shall not be affected thereby and shall remain in full force and effect.

31) **BANKRUPTCY:** Notwithstanding anything to the contrary herein or in any other document or agreement: (i) the sale is subject to notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the local rules of the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"); and (ii) the sale is subject to approval by the Bankruptcy Court, and as part of the court approval process, this Purchase Agreement is subject to higher and better offers; and (iii) as a condition to this Agreement Seller will obtain approval of Purchaser as a stalking horse bidder for the sale of the Property, requesting a breakup fee of $50,000 to be paid to Purchaser as an administrative expense in the bankruptcy case, and bid procedures requiring any initial competing bid to exceed the Purchase Price by One Hundred Thousand dollars ($100,000); and (iv) the Property will be sold in its "as-is" condition as of the date of closing of the sale; and (v) the liability of Seller is limited to the return of any Deposit paid; and if closing does not or will not occur as a result of the sale not being approved by the Bankruptcy Court or the Seller and/or Bankruptcy Court accepting a higher and better offer, the Deposit shall be promptly refunded to the Buyer.

Case 23-00104-ELG    Doc 117-5    Filed 04/18/24    Entered 04/18/24 10:32:46    Desc
Exhibit E-4 Contract with Purchaser    Page 6 of 8

DocuSign Envelope ID: 91B6C1EB-25DE-4EAE-8F3B-E524130D014A

THE PARTIES ARE ADVISED TO CONSULT THEIR RESPECTIVE ATTORNEYS WITH REGARD TO THE LEGAL EFFECT AND VALIDITY OF THIS PURCHASE AGREEMENT.

The undersigned Buyer hereby offers and agrees to purchase the above-described Property for the price and upon the terms and conditions herein stated. The undersigned Buyer hereby acknowledges receipt of an executed copy of this Agreement. This Agreement is subject to the attached Bankruptcy Addendum. In the event a conflict exists between this Purchase Agreement and the attached Bankruptcy Addendum, the Bankruptcy Addendum will control.

By: Michael Darby

BUYER: *[signature]* Authorized Signatory for MR 619 H Street A LLC

ADDRESS: 750 17th Street NW, Suite 1100

Washington, D.C. 20006

DATE: 4/17/24

TELEPHONE: (202) 777-2002

**SELLER'S ACCEPTANCE AND AGREEMENT TO PAY COMMISSION:**

The undersigned Seller agrees to sell the Property to Buyer for the price and on the terms and conditions stated herein, subject to Bankruptcy Court approval. Seller acknowledges receipt of an executed copy of this Agreement and authorizes Agent to deliver an executed copy to Buyer.

Seller reaffirms its agreement to pay to Agent a real estate brokerage commission pursuant to the terms of that certain Representation Agreement between Agent and Seller effective August 7th, 2023, and the Extension Addendum to the Representation Agreement effective January 8th, 2024, which shall remain in full force and effect. Said commission is payable in full on the Closing Date and shall be paid in cash at closing from the Seller's proceeds of the sale, subject to Bankruptcy Court approval.

By: Wendell Webster

SELLER: *(signed)* Wendell Webster
Chapter 7 Trustee for Cheng and Company LLC (Case: Case No. 23-00104)

DATE: 4/17/2024 | 10:50:15 PDT

ADDRESS: 1775 K Street NW, Ste. 290
Washington, DC 20006

TELEPHONE: (202) 659-8510

Agent accepts and agrees to the foregoing.

AGENT: **MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF NORTH CAROLINA, INC.**

BY: *(signed)* John M. Zupancic III ("Marty")

DATE: 4/17/2024 | 09:34:59 PDT

ADDRESS: 7200 Wisconsin Avenue (Suite 1101)
Bethesda, MD 20814

TELEPHONE: (202) 536-3788

PARTIES UNDERSTAND AND ACKNOWLEDGE THAT BROKER IS NOT QUALIFIED TO PROVIDE, AND HAS NOT BEEN CONTRACTED TO PROVIDE, LEGAL, FINANCIAL OR TAX ADVICE, AND THAT ANY SUCH ADVICE MUST BE OBTAINED FROM PARTIES' ATTORNEY, ACCOUNTANT OR TAX PROFESSIONAL.

Case 23-00104-ELG    Doc 117-5    Filed 04/18/24    Entered 04/18/24 10:32:46    Desc Exhibit E - Contract with Purchaser    Page 8 of 8

DocuSign Envelope ID: 91B6C1EB-25DE-4BFB-BDFB-E241CC061FC3

## Bankruptcy Addendum to Purchase Agreement

1. Wendell Webster, ("Seller" or "Trustee") is the Court appointed Chapter 7 Trustee for the bankruptcy estate Cheng and Company LLC, whose case is currently pending in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") as Case No. 23-00104

2. This Purchase Agreement ("Purchase Agreement") and sale of the property are subject to the notice and hearing requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the District of Columbia.

3. This Purchase Agreement and final sale of the Property are subject to Bankruptcy Court approval of sale and assumption and assignment of leases and higher and better offers. Sale is subject to an order of the Bankruptcy Court approving the sale, authorizing sale free and clear of liens and/or authorizing a sale subject to existing liens, and an order of the Bankruptcy Court approving assumption and assignment of tenant leases. Sale is subject to satisfying any of the sub-sections of 11 U.S.C. § 363(b), (f), and (h), or requirements for a sale subject to existing liens, and sections of 11 U.S.C. § 365.

4. The Property is sold in its "as-is" condition as of ratification of a contract. Seller makes no representations as to the condition of the property.

5. The liability of the Seller is limited to the return of the earnest money deposit.

6. No sale commission will be due except upon a successful sale and settlement.

7. Seller will convey the Property by Trustee's Deed.

8. All Seller disclosures are upon information and belief only and not personal knowledge.

9. All other terms and conditions of the Sales Contract remain in full force and effect except that if there is a conflict between this Addendum and the remaining portions of the Sales Contract, this Addendum will control.

---

_Signed: Wendell Webster_
Seller: Wendell Webster, Chapter 7 Trustee
for Cheng and Company LLC (Case: Case No. 23-00104)

4/17/2024 | 10:50:15 PDT
Date

---

_Signed_
Buyer: Michael Darby, Authorized Signatory for MR 619 H Street A LLC

4/17/24
Date

---

_Signed_
Agent: John M. Zupancic III ("Marty"), Marcus & Millichap

4/17/2024 | 09:34:59 PDT
Date