**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: | ) 23-00104-ELG |
| CHENG & COMPANY L.L.C., | ) CHAPTER 7 |
| Debtor. | ) |

**MOTION TO APPROVE BIDDING PROCEDURES IN CONNECTION WITH
MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF ANY AND ALL
LIENS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f)**
(619 H Street, N.W., Washington D.C. 20001)

**COMES NOW,** Wendell W. Webster, Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Cheng & Company L.L.C. ("Debtor"), by and through proposed counsel, McNamee Hosea, P.A., and files his *Motion to Approve Bidding Procedures in Connection with Motion to Sell Property Free and Clear of Any and All Liens and Interest Pursuant to 11 U.S.C. § 363(f)* (the "Motion"), and in support thereof, states as follows:

**PARTIES AND JURISDICTION**

1. This case commenced on April 17, 2023, when the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Court. The case converted to Chapter 7 on July 26, 2023.

2. Wendell W. Webster is the Trustee of the Debtor's Chapter 7 estate.

3. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the Local Rules of the United States Bankruptcy Court for

---

Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com
*Counsel to the Trustee*

the District of Columbia. This is a "core proceeding" in which this Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157.

4. The Trustee consents to entry of final orders and judgments by this Court.

## **STATEMENT OF FACTS**

5. The Debtor has been found to be a single-asset real estate entity as defined by 11 U.S.C. § 101(51B). [Dkt. No. 27]. The Debtor's real property is located at 619 H Street, N.W., Washington D.C. 20001 ("Property").

6. On April 18, 2024, the Trustee filed his *Motion to Sell Property Free and Clear of Any and All Liens and Interest Pursuant to 11 U.S.C. § 363(f)* (the "Sale Motion"), seeking to sell the Property to MR 619 H Street A LLC or its assigns (the "Purchaser") for $4,250,000.00. Pursuant to the Contract attached to the Sale Motion, the Purchaser has agreed to provide a deposit of $200,000.00 and has agreed to close without any contingencies other than bankruptcy court approval, and delivery of the Property vacant.

7. A hearing on the Sale Motion is scheduled for May 15, 2024.

8. The Trustee anticipates other potential purchasers may wish to submit higher and/or better bids at the Sale Hearing.

9. The Trustee requests that the Court approve the following qualifications for any potential purchaser to bid at the Sale Hearing.

   a) A bid submitted will be considered a qualified bid and the potential bidder will be considered a qualified bidder (a "**Qualified Bid**" and "**Qualified Bidder**," respectively), only if the bid is submitted by a bidder that in the Trustee's business judgment, in consultation with their advisors, is submitted seven days before the Sale Hearing (the "Bid Deadline"), and complies with all of the following requirements:

   b) The bid states that the potential qualified bidder offers to purchase, in cash, the Property upon the terms and conditions that the Trustee in his business judgment, in consultation with their advisors, reasonably determine are no less favorable to the estate than those set forth in the Contract;

2

c) The bid includes a signed writing that the potential qualified bidder's offer is irrevocable until the selection of the bidder with the highest bid (the "Successful Bidder"), provided that if such potential qualified bidder is selected as (A) the Successful Bidder, its offer shall remain irrevocable until the earlier of (i) the date the Sale Order is entered if the sale transaction with such potential qualified bidder is denied, or (ii) the date that is thirty (30) days after the Sale Hearing, or (B) the Next Best Bidder (as defined below), its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, (ii) the date that is sixty-five (65) days after the Sale Hearing;

d) There are no conditions precedent to the potential qualified bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline; and there are no conditions precedent (due diligence, financing, or otherwise) to the closing of the Transaction, other than conditions precedent consistent with those set forth in the Contract;

e) The bid includes a duly authorized and executed copy of an asset purchase agreement (an "**Bidder Contract**"), including the purchase price for the Property (the "**Proposed Purchase Price**"), together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Contract;

f) The bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, or other evidence of ability to consummate the proposed sale transaction, that will allow the Trustee in his business judgment, in consultation with his advisors, to make a determination as to the bidder's financial and other capabilities to consummate the sale transaction contemplated by the Bidder Contract;

g) The bid has value to the estate that is greater than or equal to (i) the $4,250,000 consideration provided by the Purchaser, plus (ii) $50,000 (the "**Breakup Fee**"), plus (iii) $50,000 (the "**Initial Overbid**");

h) The bid includes an acknowledgement and representation that the potential qualified bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Property prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or with the auction, except as expressly stated in the Bidder Contract; and (iv) is not entitled to and waives any right to

3

    assert a claim for any expense reimbursement, breakup fee, or similar type of payment in connection with its due diligence and bid;

i) The bid includes evidence, in form and substance reasonably satisfactory to the Trustee of authorization and approval from the potential qualified bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Bidder Contract, and any amendments thereto negotiated or occasioned by its participation in the Auction;

j) The bid is accompanied by a good faith deposit in the form of a wire transfer (to the undersigned Trustee's counsel (the "**Escrow Agent**")), certified check or such other form acceptable to the Trustee, payable to the order of the Escrow Agent in the amount of Two Hundred Thousand Dollars ($200,000.00) (the "**Good Faith Deposit**"), which shall be forfeited in the event the bidder is selected as the Successful Bidder or Next Best Bidder and fails to complete the sale transaction as required;

k) The bidder commits to supplement the bid with other information reasonably requested by the Debtors before or after the Bid Deadline;

l) The bid is received by the relevant parties set forth in the Bidding Procedures prior to the Bid Deadline; and

m) Such bidder consents to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Bidder Contract. Such bidder consents to entry of final judgments and order by the Bankruptcy Court concerning their bid and the Auction.

n) The bidder agrees that bidding will occur in $50,000 increments. Any bid that is not topped within 10 minutes may, in the Trustee's discretion, be deemed accepted.

o) No creditor shall be entitled to credit bid at the Auction.

p) The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow Agent in a separate account for the estate's benefit. If a Successful Bidder or Next Best Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder or Next Best Bidder, such Successful Bidder or Next Best Bidder's Good Faith Deposit will be forfeited to the estate. Any disputes with respect to the transfer of the Good Faith Deposits shall be resolved by the Bankruptcy Court.

10. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or public auction. The Trustee has determined that the sale of the Property by public auction, pursuant to the Bidding Procedures, will ensure that the bidding process with respect to the Property is fair, transparent, and reasonable and will yield greater value for the Debtor's estate and creditors, when compared to the prospect of a private sale.

11. The Bidding Procedures set forth the schedule for conducting the Auction and the Sale Hearing. A section 363 sale process that provides adequate time for marketing and solicitation of bids is the best mechanism to maximize value under the circumstances. The Bidding Procedures promote transparency and are fair and appropriate under the circumstances and are designed to facilitate orderly yet competitive bidding to maximize the net value realized from the sale of assets by the estates.

12. The Bidding Procedures contemplate an open-auction process that provides potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid and compete for the right to be selected the Successful Bidder during the Auction. At the same time, the Bidding Procedures provide the Trustee with an adequate opportunity to consider competing bids and select the highest or otherwise best bid.

13. Further, the breakup fee of $50,000 should be approved. By entering into the Asset Purchase Agreement, the Purchaser has subjected its bid to higher and better offers, and has therefore required the Breakup Fee.

14. The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is a customary and beneficial practice in bankruptcy cases. Often, a stalking horse bid is the best way to maximize value by locking in a purchase price "floor" and

5

helping to garner interest in the assets to be auctioned. Additionally, frequently the stalking horse bidder assumes significant up-front risk by investigating the assets and performing other due-diligence. As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process.

15. In this case, the Trustee is confronted with the option of abandoning all assets or engaging in a sale process with the Purchaser, who has insisted on the Break-Up Fee as detailed in the Contract. Other potential purchasers have insisted on similar breakup fees. The Purchaser's purpose in engaging in months of due diligence and legal negotiations, and in incurring substantial fees and costs, is to purchase the Property. It has undertaken substantial risk and effort, essentially for the benefit of every other bidder, and said efforts only benefit the ultimately successful purchaser, and therefore the Purchaser should be duly compensated if it is so outbid.

16. An auction that includes a break-up fee for a stalking horse bidder could be anticompetitive. As noted above, however, the Break-Up Fee is being provided in recognition of (a) the substantial risk and expense being undertaken by the Purchaser, with a non-paying tenant still in the Property, and (b) the reality that without this process, there is an increased risk of foreclosure. The Break-Up Fee is relatively small, constituting less than 1.2% of the consideration being provided by the Purchaser.

17. Any potential negative impact of the Break-Up Fee on the sales process is greatly outweighed by the virtually certain negative side effects of not approving the Break-Up Fee. Thus, the Court should find that the proposed Breakup Fee is reasonable under all of the circumstances, and approve the same as an administrative expense that may be paid at closing.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the bidding procedures and breakup fee outlined above, and grant such other relief as it deems appropriate and proper.

Dated:  April 18, 2024                                                Respectfully submitted

/s/ Justin Fasano
Janet M. Nesse (D.C. Bar 358514)
Justin P. Fasano (DC Bar MD21201)
McNamee Hosea
6404 Ivy Lane, Suite 820
Greenbelt, MD 20770
(301) 441-2420
jnesse@mhlawyers.com
jfasano@mhlawyers.com
*Counsel to the Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2024, I served a copy of the foregoing was served via first class mail, postage prepaid, or where indicated, by CM/ECF, upon the following:

Nancy L. Alper on behalf of Creditor Office of the Attorney General for the District of Columbia
nancy.alper@dc.gov

Darrell W. Clark on behalf of Creditor United Bank
darrell.clark@stinson.com, Siobhan.rudolph@stinson.com

Ronald Jay Drescher on behalf of Debtor In Possession Cheng & Company L.L.C.
rondrescher@drescherlaw.com, 284@notices.nextchapterbk.com

Kristen S. Eustis on behalf of U.S. Trustee U. S. Trustee for Region Four
Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

David V. Fontana on behalf of Creditor Yellow Breeches Capital LLC
dfont@gebsmith.com

Sara Kathryn Mayson on behalf of U.S. Trustee U. S. Trustee for Region Four
sara.kathryn.mayson@usdoj.gov, Robert.W.Ours@usdoj.gov

Tracey Michelle Ohm on behalf of Creditor United Bank
tracey.ohm@stinson.com, porsche.barnes@stinson.com

Kenneth L. Samuelson on behalf of Creditor Renyong Cai

ksamuelson@samuelson-law.com

Daniel Staeven on behalf of Creditor Jumbo Seafood Inc.
daniel.staeven@frosttaxlaw.com,
ann.jordan@frosttaxlaw.com;21029@notices.nextchapterbk.com

U. S. Trustee for Region Four
USTPRegion04.DC.ECF@USDOJ.GOV

Ruiqiao Wen on behalf of Creditor United Bank
ruiqiao.wen@stinson.com

Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314

DC Water & Sewer Authority
c/o David L. Gadis, CEO
5000 Overlook Avenue, SW
Washington, DC 20032

Jumbo Seafood, Inc.
c/o Julie Yun Li Cheng
619 H Street, N.W.
Washington DC 20001

Jumbo Seafood Restaurant, Inc.
c/o Anthony C. Y Cheng, Registered Agent
619 H Street, N.W.
Washington DC 20001

Merrick Garland Esq.
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530

Office of U.S. Attorney
Attn: Civil Process Clerk
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530

Maurice "Mac" VerStandig, Esq.
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
mac@dcbankruptcy.com
(By e-mail and mail)

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
31 Hopkins Plaza, Rm 1150
Baltimore, MD 21201

Marty Zupancic
Marcus & Millichap
7200 Wisconsin Ave
Suite 1101
Bethesda, MD 20814

/s/    Justin Fasano
Justin P. Fasano